**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

PEGGY JEAN TENNANT,

                                    Plaintiff,

                     - v -                                                                     Civ. No. 6:16-CV-360
                                                                                                             (DJS)[1]

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

**APPEARANCES:**                                            **OF COUNSEL:**

LAW OFFICES OF STEVEN R. DOLSON          STEVEN R. DOLSON, ESQ.
*Attorney for Plaintiff*
126 North Salina Street, Suite 3B
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION            MICHELLE L. CHRIST, ESQ.
*Attorney for Defendant*
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

In this action, Plaintiff Peggy Jean Tennant moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Acting Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB").[2] Based upon the following discussion, the Acting Commissioner's decision denying Social Security benefits is **affirmed**.

---

[1] Upon the Plaintiff's consent, the United States's general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 5 & General Order 18.

[2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 9, Pl.'s Br., & 13, Def.'s Br.

## I. BACKGROUND

Tennant, born on November 28, 1971, filed an application for DIB on April 24, 2013, claiming an inability to work as of March 20, 2012, due to a variety of ailments, including bipolar disorder, depression, and anxiety. Dkt. No. 8, Admin. Transcript [hereinafter "Tr."] at pp. 64, 65, 66, 120-23, & 137. Tennant graduated high school and her past work includes insurance agent, secretary, and a benefits clerk. *Id*. at pp. 48 & 141.

Tennant's disability application was denied on initial review. *Id*. at pp. 64 & 65-74. On June 10, 2014, a Hearing was held before Administrative Law Judge ("ALJ") Roxanne Fuller wherein testimony was procured from Tennant, who was accompanied by an attorney, and Jeannie Deal, a vocational expert ("VE"). *Id*. at pp. 45-63. On September 5, 2014, ALJ Fuller issued an unfavorable decision finding that Tennant was not disabled. *Id*. at pp. 8-25. On February 26, 2016, the Appeals Council concluded there was no basis to review the ALJ's decision, thus rendering the ALJ's decision the final determination of the Acting Commissioner. *Id*. at pp. 1–6. Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325–26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence

is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an [Administrative Law Judge's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex. rel. Williams v. Bowen*, 859 F.2d at 258.

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258; 42 U.S.C. § 405(g). However, where the weight of the evidence does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national

economy. *Id.* at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.1520. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. § 404.1520(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 404.1520(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id.* at § 404.1520(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id.* If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[3] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 404.1520(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §

---

[3] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 404.1545(a).

404.1520(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 404.1520(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Fuller's Findings

As noted above, Tennant and VE Deal testified at the ALJ Hearing. Tr. at pp. 45-63. In addition to such testimony, the ALJ had Tennant's medical records consisting of treatment reports and opinions from various treating and/or consulting physicians. *Id.* at pp. 149-72 & 184-398.

ALJ Fuller noted initially that, for DIB purposes, Tennant met the insured status requirements of the Social Security Act through December 31, 2016.[4] *Id.* at pp. 11 & 13. Using the five-step disability evaluation, ALJ Fuller found that: (1) Tennant had not engaged in any substantial gainful activity since March 20, 2012, the alleged onset disability date; (2) she has severe medically determinable impairments, namely bipolar disorder, depression, and anxiety, but all of her physical

---

[4] In order to qualify for DIB, Tennant's disability must have commenced at a time when she met the insured status requirements as provided by the Social Security Act. 42 U.S.C. §§ 423(a)(1)(A) & (c)(1); 20 C.F.R. §§ 404.130 & 404.315(a).

impairments are not considered to be severe; (3) her severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; (4) she retains the RFC to perform the full range of work at all exertional levels with certain limitations to accommodate her various non-exertional limitations, and, as such, she could not return to any of her prior work; but, (5) considering her age, education, work experience, RFC, VE testimony, and using the Medical-Vocational Guidelines as a framework, Tennant could perform work available in the national economy and was therefore not disabled. *Id.* at pp. 13-22.

### D. Plaintiff's Contentions

Plaintiff's primary argument on appeal is that in rendering her RFC, the ALJ did not apply the correct legal standards in assessing the opinion evidence in the Record, most notably, the assessment submitted by Plaintiff's Treating Physician, Richard Brown, M.D. *See generally* Pl.'s Br.

As noted above, the Commissioner assesses a claimant's RFC as a basis for determining the particular types of work the claimant may be able to do despite the existence of physical and/or mental impairments. *See* 20 C.F.R. § 404.1545(a); 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(c). In qualifying work in the national economy, the Regulations classify and define jobs according to their physical exertion requirements as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id*. at § 404.1545(a).

When assessing Tennant's RFC, ALJ Fuller reviewed the medical record and opinion

evidence and determined that Tennant had the

> residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: occasional operating a motor vehicle; occasional exposure to moving mechanical parts; occasional exposure to unprotected heights; able to perform simple, routine, repetitive tasks; able to work in a low stress job, defined as having no satisfaction of specific production quotas; no assembly line pace work; no interaction with the public; only occasional superficial interaction with coworkers and supervisors.

Tr. at p. 16.

In rendering this RFC, the ALJ found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were less than fully credible and gave little weight to her Hearing testimony. *Id*. at p. 19. In support of this finding, the ALJ noted that recent treatment notes were relatively unremarkable and there was no significant deterioration of her symptoms. *Id*. Furthermore, the ALJ noted that much of Tennant's symptoms were attributable to external stressors relating to family stressors and dealing with her Father's death, and as such, may not be representative of her overall functioning. *Id*. Nevertheless, accommodations were made in the RFC to account for certain non-exertional limitations, as noted above, such as limiting Tennant to simple, routine, and repetitive tasks in a low-stress environment, and having only occasional, superficial interaction with co-workers and supervisors, with no interaction with the public. *Id*.

With regard to the opinion evidence in the record, the ALJ gave partial weight to the Mental Residual Functional Capacity provided on September 5, 2013, by State Agency Psychiatric Consultant J. Straussner, Ph.D. (*id*. at p. 20 (referencing *id*. at pp. 65-74)); little weight to the assessment rendered by State Agency Psychological Consultant Jacqueline Santoro, Ph.D. (*id*. at p. 18-19 (referencing *id*. at pp. 338-42)); and little weight to the Mental Residual Functional Capacity statement rendered by Dr. Brown (*id*. at pp. 19-20 (referencing *id*. at pp. 352-56)).

In her Brief, Plaintiff primarily disputes the weight attributed to the assessment rendered by

Dr. Brown, whom Plaintiff regularly treated with, and thus the Court will focus attention to the treatment and assessments provided by Dr. Brown. *See* Pl.'s Br. at pp. 5-7.

Under the Regulations, a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999).[5] The treating physician doctrine recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time non-examining, non-treating physician. 20 C.F.R. § 404.1527(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993). Such opinions are not controlling, however, if contradicted by other substantial evidence in the record, including the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Where conflicts arise in the medical evidence, resolution of such is properly entrusted to the Commissioner. *Veino v. Barnhart*, 312 F.3d at 588 (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]" *See Schisler v. Sullivan*, 3 F.3d at 568 (discussing 20

---

[5] A "treating physician" is the claimant's "own physician, osteopath or psychologist (including outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation, and who has or had an ongoing treatment and physician-patient relationship with the individual." *Jones v. Apfel*, 66 F. Supp. 2d 518, 524-25 (S.D.N.Y. 1999) (quoting *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988)).

C.F.R. §§ 404.1527 & 416.927). An ALJ may not "arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Rosa v. Callahan*, 168 F.3d at 79. The ALJ must properly state the reasons for giving less than controlling weight to a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d at 32. Failure to apply the appropriate legal standards for considering a treating physician's opinion is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of a treating physician's opinion. *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987); *see also Barnett v. Apfel*, 13 F. Supp. 2d 312, 316-17 (N.D.N.Y. 1998).

As noted by ALJ Fuller, Plaintiff received virtually all of her treatment through Bassett Healthcare, and Dr. Brown provided most of her care, beginning in February 2005, for concerns regarding anxiety and depression. For approximately five months thereafter, Plaintiff was seen by Dr. Brown on a monthly basis. From there, however, the treatment became more sporadic, occurring roughly every two months, though at times there were months without treatment, and there are no treatment records between May 3, 2007 and March 19, 2012, the day prior to Plaintiff's alleged onset disability date. *See* Tr. at pp. 187-203. On March 19, 2012, Plaintiff was seen by James A. Martin, RPA-C, at Bassett Healthcare for complaints of increased panic attacks dating back one week which had gotten worse, having three or more per day. *Id*. at pp. 275-79. She was then seen by Dr. Brown on March 29, 2012, complaining of a mixture of panic attacks and anxiety, which had been increased in the work setting. *Id*. at pp. 205-07. Upon examination, Dr. Brown noted that Tennant appeared her stated age with fair insight. He observed that she was "moderately distressed", "obviously anxious", and "distractible", and determined that she was unable to work in her present condition. *Id*. at p. 206. He diagnosed Plaintiff with bipolar disorder type II and anxiety

disorder with panic. *Id*. He assessed her Global Assessment of Functioning (GAF) score of 45-50,[6] adjusted her medication, and determined that she could not return to work until May 1 "because of the timeframe and the depth of her symptoms." *Id*. Plaintiff returned to RPA Martin on March 30, who noted that her panic attacks had "much improved" and that she appeared to be oriented and "much calmer." *Id*. at p. 272.

Tennant returned to Dr. Brown on April 18, 2012.[7] During that visit, she was counseled regarding the stress she experienced in dealing with her Father's recent diagnosis of ALS and her Father-in-Law's recent diagnosis with a "significant illness." *Id*. at p. 209. Tennant continued to see Dr. Brown once-to-twice a month through August 2012, *id*. at pp. 209-17, at which point treatment became more sporadic due to Tennant missing appointments, *id*. at pp. 221-223 & 314. Throughout this period, Dr. Brown continued to push Plaintiff's disability period back while she dealt with family stressors. *See id*. at p. 205-07 (disability period set to May 1, 2012), 209 (disability period pushed back to May 25, 2012), 213 (disability extended to July 8, 2012), 215 (target return to part-time work set for July 16, 2012), & 217 (target return to work set for September 1, 2012). During this period of time, Plaintiff appeared to improve in dealing with her grief and coping with her Father's illness and the expectations imposed upon her by him. *Id*. at pp. 211, 215, & 217.

On November 6, 2012, Plaintiff returned to Dr. Brown, having last saw him on July 19, 2012.

---

[6] The Global Assessment of Functioning ("GAF") is a scale promulgated by the American Psychiatric Association to assist "in tracking the clinical progress of individuals [with psychological problems] in global terms." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (American Psychiatric Association, 4th Ed. Text Revision 2000). The scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health. A GAF of 41 to 50 means that an individual has serious symptoms or any serious impairment in social, occupational, or school functioning. *Id*.

[7] In several appointments with Dr. Brown, Plaintiff indicates that she is also being treated by David Flynn, however, there are no treatment records establishing such care.

*Id*. at p. 221. She reported the passing of her Father-in-Law and an estrangement with her Father. *Id*. Her disability had expired and she had no plans to go back to work as she felt she could not focus. *Id*. On examination, her speech was fluent and goal directed and her level of insight was fair with an "obvious grieving and a stress because of the chronic issues with her family." *Id*. Plaintiff reported that her husband remains supportive and they planned to move in with her Mother-in-Law. *Id*. On February 1, 2013, Plaintiff returned to Dr. Brown reporting dealing with multiple stressors around issues with her Father; his advancing ALS remained an "obvious ongoing stress." *Id*. at p. 223. Plaintiff reported tolerating her medications well, and, despite the stress, Plaintiff relayed that she is considering returning to work. *Id*.

After missing several visits, Tennant again returned to see Dr. Brown on May 21, 2013. *Id*. at p. 314. Plaintiff reported a number of external stressors, primarily due to her Father's decline with ALS. Plaintiff reported limitations with "out-of-home function" due to increased anxiety. *Id*. Plaintiff had a hysterectomy scheduled that same week and Dr. Brown discussed the role of physical activity following her recuperation from that surgery. *Id*.

On June 6, 2013, Dr. Brown completed a Mental Residual Functional Capacity Questionnaire. *Id*. at pp. 352-56. Based upon his treatment of Tennant, Dr. Brown diagnosed Plaintiff with panic disorder with agoraphobia and bipolar disorder. *Id*. at p. 352. He noted that she had fair response to treatment with continued anxiety, social isolation, and sleep impairment, and he assigned a GAF score of 60.[8] *Id*. Dr. Brown indicated that Tennant's signs and symptoms

---

[8] This score is an improvement from the 45-50 GAF score Dr. Brown assessed in 2012. *See supra* note 6. A GAF of between 51 and 60 indicates moderate symptoms (*i.e.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*i.e.*, few friends, conflicts with peers or co-workers). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (American Psychiatric Association, 4th Ed. Text Revision 2000)

included: anhedonia or pervasive loss of interest in almost all activities; decreased energy; mood disturbance; persistent disturbance of mood or affect; apprehensive expectation; emotional withdrawal or isolation; sleep disturbance; and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week. *Id.* at p. 353.

In assessing Tennant's ability to do work-related activities, Dr. Brown determined that due to her anxiety, which impairs concentration, interpersonal interactions, and independent functioning, Tennant was "seriously limited" in her ability to maintain attention for two-hour segments; maintain regular attendance and be punctual within customary, usually strict tolerance; and deal with normal work stress. *Id.* at p. 354. He also determined that Tennant was "seriously limited" in her ability to work in coordination with, or proximity to, others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Dr. Brown further assessed that Tennant was "unlimited" in her ability to understand, remember, and carry out very short and simple instructions; make simple work-related decisions; ask simple questions or request assistance; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and be aware of normal hazards and take appropriate precautions. *Id.* Also, due to her anxiety and depression, which impairs concentration and memory, Dr. Brown opined that Tennant was seriously limited in her ability to understand, remember, and carry out detailed instructions; and interact appropriately with the general public. *Id.* at p. 355. Lastly, Dr. Brown opined that because of her impairments, Tennant would be absent from work more than four days per month and that she could

not engage in full-time competitive employment on a sustained basis. *Id*. at p. 356.

In addition to the above, Judge Farrell reviewed Tennant's testimony during the Hearing and compared it to her statements to the SSA regarding her daily activities. *Id*. at p. 19. For example, Plaintiff testified during the Hearing that she had no hobbies or interests and needs help with most daily activities. *Id.* at pp. 52-53. She also testified that her medication helps her "greatly" though fatigue is a side effect. *Id*. at p. 55. In her report to the SSA regarding her daily activities, Plaintiff indicated that she dresses, bathes, and grooms herself; cooks and prepares food; performs general cleaning and laundry; driving short distances; and shopping with help. *Id*. at pp. 151-54.

In reviewing the evidence of record, the ALJ recounted the long treatment history provided by Dr. Brown to Plaintiff. *Id*. at pp. 17-18. He then stated two separate reasons for according little weight to Dr. Brown's assessments. First, the terminology utilized in the assessment, such as "seriously limited" or "unlimited" did not have equivalence in "Social Security language" and was therefore "too vague to receive much weight." *Id*. at p. 20. Plaintiff challenges the ALJ's reasoning by asserting that the definitions of these terms are included within the assessment. Pl.'s Br. at p. 6. According to the form provided by Dr. Brown, "[s]eriously limited means ability to function in this area is seriously limited and would frequently be less than satisfactory in any work setting." Tr. at p. 354. This definition does little to overcome the ALJ's criticism, namely that there is no equivalent to Social Security terminology, thus rendering the assessment vague. Furthermore, as noted by the Defendant, standardized forms, such as that filled out by Dr. Brown, are "only marginally useful." *Halloran v. Barnhart*, 362 F.3d at 31 n.2; *see also Klodzinski v. Astrue*, 274 F. App'x 72, at *1 (2d Cir. Apr. 23, 2008) (citing *Halloran* and noting that the Circuit has "previously criticized" such standardized forms as "only marginally useful").

The second reason cited by the ALJ for giving little weight to Dr. Brown's assessments is that the treatment history did not reflect such severe limitations as to keep Plaintiff out of work more than once a week. To support this contention, the ALJ cited to more recent treatment notes which showed unremarkable mental status examinations. *Id.* (citing *id.* at pp. 392-98). For example, in a visit on April 8, 2014, Plaintiff reported increased depression following the passing of her Father. *Id.* at p. 392. Upon examination, Dr. Brown noted logical thought process; intact insight; and grossly normal judgment. *Id.* at p. 394. Nevertheless, the ALJ notes that the RFC assessment includes limitations that reflect Plaintiff's "actual abilities", some of which are indicated correctly by Dr. Brown, such as the ability to understand, remember, and carry out simple, unskilled work. *Id.* at p. 20. Plaintiff also contends that Dr. Brown's finding that Plaintiff would be absent from work for more than four days per month is supported by the assessment of Dr. Santaro, a consultive examiner, who indicated that Plaintiff would have a marked limitation in maintaining a schedule. Pl.'s Br. at p. 6. While consistency with other opinions in the record may be a basis for buttressing an opinion, in this case, the ALJ similarly gave little weight to that aspect of Dr. Santoro's opinion because "nothing on file supports 'marked' limitations in maintaining a regular schedule." Tr. at p. 20. Instead, the ALJ gave partial weight to the Mental Residual Functional Capacity provided on September 5, 2013, by State Agency Psychiatric Consultant J. Straussner, Ph.D., who opined that Dr. Santoro's opinion was "an overestimate of the severity of [Tennant's] restrictions/limitations and based only on a snapshot of [her] functioning." *Id.* at pp. 72-73. Dr. Straussner's opinion that Tennant was able to respond to supervision while performing work involving simple tasks was accommodated by the ALJ in the RFC with the additional limitation the Tennant have no contact with the public. *Id.* at pp.20 & 72.

The ALJ is entitled to weigh the evidence before him and determine and accept findings that are consistent with the evidence in the record. It was therefore not an error for the ALJ to accept only those portions of the opinion evidence that were consistent with the evidence in the record. Notably the Regulations allow the ALJ to give less weight to medical opinions if it is not supported by medically acceptable clinic clinical laboratory diagnostic techniques and is inconsistent with other substantial evidence in the record, such as the case here. 20 C.F.R. § 404.1527(d)(2); *see also Monroe v. Comm'r of Soc. Security*, __ F. App'x __, 2017 WL 213363 (2d Cir. Jan. 18, 2017) (giving deference to the ALJ's rejection of a treating physician's opinion where the physician's opinion was contrary to his own treatment notes and noting that the ALJ properly explained his reasons for rejecting the opinion); *cf. Gavazzi v. Berryhill*, __ F. App'x __, 2017 WL 1400456 (2d Cir. Apr. 19, 2017) (remanding the case to the SSA where the ALJ failed to explain his reasons for rejecting parts of the treating physician's opinion and simply stated that there was no clinical evidence to support the opinion and that parts of the opinion were not supported by the treatment notes). Accordingly I find that the ALJ correctly assessed the medical opinions contained in the record and applied the correct legal principles in rendering his RFC assessment.

### III. CONCLUSION

In light of the above, I find that as to the arguments raised by Plaintiff on appeal, the ALJ did not commit any legal errors and his findings are supported by substantial evidence in the record. As such, it is hereby

**ORDERED**, that the Acting-Commissioner's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order upon the parties to this action.

**SO ORDERED**.

Date: May 10, 2017
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge